IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRAM & KRISTIAN ATES | § | PLAINTIFFS |
| | § | |
| v. | § | Civil Action No. 1:10cv272-HSO-JMR |
| | § | |
| B&D CONTRACTING , INC. | § | DEFENDANT |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion [45-1] for Summary Judgment, pursuant to FED. R. CIV. P. 56, filed by Defendant B&D Contracting, Inc. ["Defendant"].  Plaintiffs Bram and Kristian Ates ["Plaintiffs"] have filed a Response in Opposition [49-1], and Defendant a Rebuttal [51-1].  After due consideration of Defendant's Motion, Plaintiffs' Response, the Rebuttal, the related pleadings, the record, and the relevant law, the Court is of the opinion that Defendant's Motion should be granted.

### I. FACTUAL AND PROCEDURAL HISTORY

A.   Facts

On September 17, 2007, Defendant, a Louisiana corporation and a labor personnel contractor, entered into a "Contract Labor Agreement" with VT Halter Marine, Inc. ["Halter"].  Defendant agreed to provide personnel to satisfy certain labor needs of Halter.  B&D Contract, att. as Ex. "A" to Aff. of Randall Smith, att. as Ex.  "B" to Def.'s Mot. for Summ. J.  In December 2008, Halter submitted a labor request which resulted in Defendant assigning Alex Caballero to work for Halter.

-1-

Masse Contracting, Inc. ["Masse"], also a Louisiana corporation, and a labor personnel contractor like Defendant, had entered into a similar "Contract Labor Agreement" with Halter on April 28, 2008, wherein Masse also agreed to provide laborers to Halter. Masse Contract, att. as Ex. "E" to Def.'s Mot. for Summ. J. On November 16, 2009, Plaintiff Bram Ates, employed by Masse, was assigned to work for Halter as a painter.

On November 20, 2009, the towing vessel ACHIEVEMENT was under construction and moored to a dock at the Halter shipyard located in Escatawpa, Mississippi. Both Plaintiff Bram Ates and Alex Caballero were assigned to and working aboard the vessel that day. According to Plaintiffs' Complaint, at approximately 3:50 p.m. that afternoon, Caballero introduced combustible and explosive industrial solvent into an underground engine room aboard the ACHIEVEMENT which resulted in a flash fire in the tanks located under the engine room. The explosion caused two deaths, including Alex Caballero's, and injured five individuals. U.S. Coast Guard Marine Accident Report, att. as Ex. "F" to Pls.' Resp. to Mot. for Summ. J. Plaintiff Bram Ates, one of the five injured, sustained severe burns which have required multiple skin-graft procedures. Dep. of Arnold Luterman, M.D., at pp. 8, 12, att. as Ex. "G" to Pls.' Resp. to Mot. for Summ. J. After the explosion, Plaintiff Bram Ates received compensation and medical benefits, through Masse, under the Longshore Habor Workers' Compensation Act ["LHWCA"], 33 U.S.C. § 901, *et seq.* U.S. Dept. of Labor Payment of Compensation Form, att. as Ex. "A" to Def.'s Mot. for Summ. J.

B.   Procedural History

Plaintiffs filed their Complaint [1-1] in this Court on June 16, 2010, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332 and admiralty and maritime jurisdiction under 28 U.S.C. § 1333(1).  Compl. [1-1] at p. 2.  According to the Complaint, Defendant contracted to provide Halter with labor personnel and also undertook certain duties including, but not limited to: "managing, paying, insuring and administering drug testing to all Defendants' employees furnished to Purchaser."  *Id.* at pp. 2-3.  Plaintiffs assert claims for negligence; gross negligence; negligent hiring, retention, and training; grossly negligent hiring, retention, and training; and loss of consortium.  Plaintiffs claim they have suffered permanent injuries and disabilities, physical pain and suffering, mental anguish, loss of enjoyment of life, loss of earnings, impairment of the ability to earn, and permanent disfigurement.  *Id.* at p. 6.  They seek an award of compensatory damages as well as costs.

Defendant now moves for dismissal of Plaintiffs' claims on immunity grounds, arguing that: 1) Plaintiffs have failed to produce sufficient evidence to establish tort liability because at the time of the accident in question, Defendant's nominal employee Alex Caballero was the borrowed employee of Halter; and 2) Defendant was under no obligation to provide Alex Caballero, hired as an unskilled laborer, with specialized training to work at Halter.  Def.'s Mot. for Summ. J. at p. 1.

II.  DISCUSSION

A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1991)).

The existence of a factual dispute does not preclude summary judgment if the dispute is neither material nor genuine. *Lyle v. Dedeaux*, 39 F.3d 320, 1994 WL 612506, *2 (5th Cir. 1994) (citing *Professional Managers, Inc. v. Fawer, Brian,*

*Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *Lyle*, 1994 WL 612506, at *2.

B.   Borrowed Employee Status

Section 933(I) of the LHWCA provides:

> [t]he right to compensation or benefits under [the LHWCA] shall be the exclusive remedy to an employee when he is injured . . . by the negligence or wrong of any other person or persons in the same employ: *Provided,* That this provision shall not affect the liability of a person other than an officer or employee of the employer.

33 U.S.C. § 933(I).

The Fifth Circuit Court of Appeals has determined that Section 933 is the exclusive remedy for on-the-job injuries and affords immunity from tort actions. *See Lemaire v. Danos & Curole Marine Contr., Inc.*, 265 F. 3d 1059, 1059 (5th Cir. 2001); *Soileau v. Danos & Curole Marine Contr., Inc.*, 14 F. 3d 53, 53 (5th Cir. 1993); *Perron v. Bell Maint. & Fabricators, Inc.*, 970 F. 2d 1409, 1412-13 (5th Cir. 1992).

Defendant contends that there can be no dispute that Plaintiff Bram Ates, was

Halter's borrowed servant under 33 U.S.C. § 905(a)[1], and is currently receiving benefits under the Louisiana LHWCA through his nominal employer Masse, which is his exclusive remedy. Def.'s Mem. in Supp. of Mot. for Summ. J. at p. 3. In this case, Plaintiffs assert claims against B&D, as the employer of Alex Cabellero, and not against Alex Cabellero himself. Defendant contends that because Bram Ates and Alex Caballero were co-employees of Halter, Plaintiffs are precluded from recovering from Defendant under a common law tort cause of action.

This Court must, as a matter of law, determine whether at the time of the incident on November 20, 2009, Plaintiff Bram Ates and Alex Caballero were both considered the borrowed employees of Halter. *Billizon v. Conoco, Inc.*, 993 F. 2d 104, 105 (5th Cir. 1993). If so, then Plaintiff's exclusive remedy is through the LHWCA due to co-employee immunity.

> "The prohibition of suits between co-workers under the [LHWCA] is not a personal defense but may be claimed by the negligent co-workers' solidary obligors." *Louisiana Land & Exploration Co. v. Amoco Prod. Co.,* 878 F. 2d 852, 855 (5th Cir. 1989)(citing *Nations v. Morris,* 483 F. 2d 577, 589 (5th Cir. 1973). . . . Under the law, the borrowed employee and his nominal employer are considered one and the same for liability purposes. *Guillory*, 534 F. Supp. 2d at 275.

Def.'s Rebuttal at p. 6.

---

[1] Section 905(a) of the LHWCA provides in pertinent part that:

[t]he liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . .

3 U.S.C. § 905(a).

In order to assess the "borrowed" status of Plaintiff Bram Ates and Alex Cabellero, the Fifth Circuit has promulgated nine factors for courts to consider:

> (1) Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?
> (2) Whose work was being performed?
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
> (4) Did the employee acquiesce in the new work situation?
> (5) Did the original employer terminate his relationship with the employee?
> (6) Who furnished tools and place for performance?
> (7) Was the new employment over a considerable length of time?
> (8) Who had the right to discharge the employee?
> (9) Who had the obligation to pay the employee?

*Ruiz v. Shell Oil Co.*, 413 F. 2d 310, 312-13 (5th Cir. 1969); *accord Fontenot v. Mobil Oil Exploration & Producing Southeast, Inc.*, 1993 WL 261096, *2 (5th Cir. 1993); *Billizon,* 993 F. 2d at 105 (citing *Brown v. Union Oil Co. of California*, 984 F. 2d 674, 676 (5th Cir. 1993)).

Plaintiffs "agree . . . that - properly applying the nine *Ruiz* factors in accordance with Fifth Circuit precedent - both Plaintiff Ates and Mr. Cabellero were the 'borrowed employees' of Halter." Pls.' Resp. at p. 6. With this concession in mind, the Court applies the nine enumerated factors to this case.

    1. <u>Who Had Control Over Employee and the Work Being Performed?</u>

The record and exhibits proffered in this case demonstrate that both Plaintiff Bram Ates and Alex Caballero punched in on a Halter clock and received daily work assignments, directions, and supervision from Halter. Aff. of Randall Smith, att. as Ex. "B" to Def.'s Mot. for Summ. J.; Dep. of Bram Ates, at pp. 16, 18, att. as Ex. "C" to Def.'s Mot. for Summ. J.; Dep. of Hank Stewart, at p. 11, att. as Ex. "D" to Def.'s Mot.

for Summ. J. This factor weighs in favor of a finding that Plaintiff Bram Ates and Alex Caballero were borrowed employees of Halter.

 2. *Whose Work was Being Performed?*

Neither Defendant nor Masse were in the business of shipbuilding. Both supplied laborers to Halter and other shipbuilders. Moreover, when asked whether his job assignments came from Halter, Plaintiff Bram Ates responded affirmatively. Dep. of Bram Ates, at p. 22, att. as Ex. "C" to Def.'s Mot. for Summ. J. This factor weighs in favor of a finding that Plaintiff Bram Ates and Alex Caballero were borrowed employees of Halter.

 3. *Existence of Agreement or Understanding Between Original and Borrowing Employer?*

The "Contract Labor Agreement" was between Defendant as Contractor and Halter as Purchaser. It provided in part that:

> . . . Purchaser shall, during the term of this agreement, have the right of control over the manner and details of work to be performed by employees provided to Purchaser by Contractor hereunder. Additionally, Contractor and Purchaser hereby acknowledge and agree that (I) Purchaser shall be a "statutory employer", "special employer" or "co-employer" of each employee of Contractor furnished to Purchaser under this agreement and each such employee shall be a "loaned servant" or "borrowed servant" solely and exclusively for purposes of applicable law relating to workers' compensation, and (ii) the work to be performed by Contractor and employees of Contractor furnished to Purchaser hereunder is an integral part of and is essential to the ability of Purchaser to generate Purchaser's goods, products and services and is exclusively the work of Purchaser.

B&D Contract, ¶ 6, att. as Ex. "A" to Aff. of Randall Smith, att. as Ex. "B" to Def.'s Mot. for Summ. J.

Similarly, the agreement between Masse and Halter provided the exact

specifications and contained identical language as to the delegation of control as that set forth in Paragraph 6 of the Contract between Defendant and Halter. Masse Contract, at p. 2, ¶6, att. as Ex. "E" to Def.'s Mot. for Summ. J. This factor weighs heavily in favor of Plaintiff Bram Ates and Alex Cabellero both being borrowed employees of Halter.

    4.  *<u>Did the Employee Acquiesce in the New Work Situation?</u>*

Both Ates and Caballero were employed by labor personnel contractors that assigned laborers to maritime work environments. There can be no serious dispute that both were aware that they would be placed to various shipyards and thus assigned to different employers at different times. Plaintiff Bram Ates testified that he was aware that he would be sent to different shipyards to work. Dep. of Bram Ates, at pp. 27, 47, att. as Ex. "C" to Def.'s Mot. for Summ. J. This evidence amounts to acquiescence in fact on the part of Plaintiff Bram Ates. *See Fontenot v. Mobil Oil Exploration & Producing Southeast, Inc.*, 997 F. 2d 881 (5th Cir. 1993). Similarly, Alex Caballero had worked for Halter for eleven months prior to the explosion. Dep. of Hank Stewart, at pp. 11-12, att. as Ex. "D" to Def.'s Mot. for Summ. J. This factor weighs in favor of Plaintiff Bram Ates and Alex Cabellero being considered borrowed employees of Halter.

    5.  *<u>Did the Original Employer Terminate the Relationship with Employee?</u>*

The evidence supports Defendant's position that it did not supervise or control either Bram Ates or Alex Caballero in their work performed for Halter. Instead,

Defendant remained contracted as a service for placement of laborers throughout its relationship with Halter. Defendant was Alex Cabellero's lending employer and as such "did not have to completely sever its relationship" with Caballero. *U.S. Fire Ins. Co. v. Miller*, 381 F. 3d 385, 390 (5th Cir. 2004); *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F. 2d 615, 617-18 (5th Cir. 1986). This factor also weighs in favor of both men being borrowed employees of Halter.

      6.    *Who Furnished Tools and Place for Performance?*

Halter owned not only the shipyard where the ACHIEVEMENT was moored and being constructed, Dep. of Hank Stewart, at p. 7, att. as Ex. "D" to Def.'s Mot. for Summ. J., but also the materials, tools, and equipment used by the laborers, including Ates and Caballero, utilized for the purpose of constructing the ACHIEVEMENT, *id.* at pp. 12, 24. This factor weighs in favor of Plaintiff Bram Ates and Alex Cabellero being considered borrowed employees of Halter.

      7.    *Was the New Employment Over a Considerable Length of Time?*

The evidence demonstrates that Alex Caballero had been working at the Halter shipyard for eleven months. Aff. of Randall Smith att. as Ex. "A" to Def.'s Mot. for Summ. J. Plaintiff Bram Ates had been employed at Halter for four days. While this weighs in favor of Alex Caballero being a borrowed employee of Halter, it weighs against Plaintiff Bram Ates being a borrowed employee of Halter.

      8.    *Who Had the Right to Discharge the Employee?*

According to Randall Smith, Alex Cabellero was "subject to termination at

Halter." *Id.* However, according to Hank Stewart, "Halter does not terminate those employees, . . . we refer them back to the contractor." Dep. of Hank Stewart, at p. 40, att. as Ex. "D" to Def.'s Mot. for Summ J.

> Where the borrowing employer . . . has the right to terminate the borrowed employee's services with the borrowing employer, even though the borrowing employer does not have the right to terminate the borrowed employee's position with the nominal employer . . . the right to discharge factor is satisfied.

*Robertson v. W & T Offshore, Inc.*, 712 F. Supp. 2d 515, 534 (W.D. La. 2010). While the testimony was conflicting as to who possessed the right to terminate contracted laborers, the fact that Plaintiffs confessed the borrowed employee status of Ates and Cabellero, coupled with the case law in support of a finding of borrowed employee status in this case, leads the Court to conclude that this factor weighs in favor of Plaintiff Bram Ates and Alex Caballero being the borrowed employees of Halter.

    9. *Who Was Obligated to Pay the Employee?*

  The terms of the relevant contracts provided that the Contractor shall "assume responsibility for the payment of wages to each of the employees furnished to Purchaser hereunder without regard to whether any payments have been made by Purchaser to Contractor hereunder or otherwise; . . . ." Masse Contract, att. as Ex. "E" to Def.'s Mot. for Summ. J.; B&D Contract, att. as Ex. "A" to Aff. of Randall Smith, att. as Ex. "B" to Def.'s Mot. for Summ. J. According to Randall Smith, Halter supplied the wages which Defendant paid Cabellero, while Defendant provided the physical paychecks. *Id.*

While such arrangements have been deemed to favor borrowed employee status, *see Billizon v. Conoco, Inc.*, 993 F.2d 104, 105-06 (5th Cir. 1993); *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1246 (5th Cir. 1988); *Robertson v. W & T Offshore, Inc.*, 712 F. Supp. 2d 515, 534 (W.D. La. 2010), this Court concludes that based on the record evidence, this factor is neutral.

Based upon its examination of these factors, the record, and Plaintiffs' Response, which states in part that: "we agree with B&D that properly applying the nine *Ruiz* factors in accordance with Fifth Circuit precedent, - both Plaintiff Ates and Mr. Caballero were the 'borrowed employees' of Halter," Pls.' Resp. at p. 6, the Court concludes that Plaintiff Bram Ates and Alex Cabellero were the borrowed employees of Halter, and thus they were co-employees at Halter. An action such as this one, against a co-employee's nominal employer, would not be consistent with the LHWCA's comprehensive scheme. *Lemaire v. Danos & Curole Marine Contractors, Inc.*, 2001 WL 872840, *12 (5th Cir. 2001)(citing *Perron v. Bell Maint. and Fabricators, Inc.*, 970 F. 2d 1409, 1412. (5th Cir. 1992)). Defendant is therefore immune under § 905(a) and entitled to summary judgment on Plaintiffs' claims.

C.  Tort Liability and LHWCA

Because Plaintiff Bram Ates and Alex Cabellero were persons in the same employ, Plaintiffs' exclusive remedy was compensation under the LHWCA. However, Plaintiffs assert that immunity under the LHWCA does not, and should not, bar their claims against Defendant for negligent hiring and negligent failure to train. Pls.' Resp. to Mot. for Summ. J. at pp. 7, 10. They argue "that a claim against Caballero - if one

had even been made - would be barred in the Fifth Circuit by the co-employee immunity under the LHWCA does not compel that a different claim against B&D for its own independent tort is barred." *Id.* at p. 10. Plaintiffs contend that Defendant was negligent in performing its duties under the Contract Labor Agreement by failing to properly train Cabellero. *Id.* at p. 15. They likewise maintain that Defendant was negligent in hiring Cabellero, inasmuch as Defendant was contractually obligated to send trained employees into a workplace. *Id.* at p. 12. Notwithstanding any immunity under the LHWCA, Defendant responds that it is nonetheless entitled to summary judgment on Plaintiffs' negligence claims because: 1) it had no control over the performance of the work duties assigned to its laborers; and 2) it was not contractually obligated to provide training to its unskilled labor force, of which Caballero was a member. Def.'s Rebuttal Mem. at p. 7.

In support of their negligence claims, Plaintiffs rely on and attempt to distinguish *Guillory v. Gokutu*, 534 F. Supp. 2d 267 (D.R.I. 2008), a case cited by Defendant in its memorandum. In that case, the plaintiff asserted negligent training and negligent hiring claims against a staffing company which was in the business of providing "skilled workers to businesses in the maritime industry." *Id.* at p. 267.

*Guillory* determined that the LHWCA was all encompassing, and afforded tort immunity to the nominal employer:

> under the comprehensive scheme of the LHWCA, a nominal employer is not an independent third party. *See* § 933(a). Rather, a "nominal employer and its negligent nominal employee who was a borrowed servant/co-employee to the injured party are solidary obligors." *Jones [v.*

> *Compression Coat Corp.,* 776 So.2d 505,] 509 [La. App. 2000].
> "Consequently, the injured employee may not assert against the nominal employer of his injuring co-employee his right to sue in tort because that right is nonexistent against the injuring co-employee." *Id.*

*Guillory,* 534 F. Supp. 2d at 274-75.

In the present case, Defendant is entitled to the same immunity afforded co-employees under the LHWCA. This is because the undisputed record evidence supports the conclusion that Caballero and Ates were both borrowed employees of Halter at the time of the accident. *Perron v. Bell Maint. and Fabricators, Inc.*, 970 F. 2d 1409, 1412 (5th Cir. 1992).

Moreover, the "Contract Labor Agreement" entered into between Defendant and Halter states that: "Contractor [Defendant] agrees to furnish said qualified employees as per Purchaser's specifications." B&D Contract, att. as Ex. "A" to Aff. of Randall Smith, att. as Ex. "B" to Def.'s Mot. for Summ. J. Halter did not describe particular labor needs, give labor specifications, or train contract laborers in specific areas. Rather Halter requested "laborers" from Defendant, which Halter defined as one "who is healthy enough to go to work and stoop, bend or squat, whatever." Dep. of Randall Smith, at pp. 44-45, 86-87, att. as Ex. "F" to Def.'s Rebuttal.

The Court finds that, based upon *Guillory* and the record, Plaintiffs are unable to establish the existence of any duty or contractual obligation on the part of Defendant to provide "skilled" or "trained" laborers to Halter as it relates to Alex Caballero. Given Halter's very minimal requirements for laborers, there can be no material fact question that supplying an unskilled laborer, such as Cabellero, satisfied Defendant's

contractual obligations to Halter and would not support a finding of the breach by Defendant of any independent duty to Plaintiffs, assuming one existed in this case. Therefore, Plaintiffs' claims for failure to train and negligent hiring cannot succeed as a matter of law.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should and will be granted. Plaintiffs' claims against Defendant will be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Motion [45-1] for Summary Judgment, pursuant to FED. R. CIV. P. 56, filed by Defendant B&D Contracting, Inc., is **GRANTED.**

**SO ORDERED AND ADJUDGED**, this the 9th day of November, 2011.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE